FILED

2015 Jun-08  PM 05:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LELIA F. COLLIER, individually, and ANTOINE COLLIER, individually, ) ) ) ) | |
| Plaintiffs, ) ) | **CIVIL COMPLAINT** |
| v. ) ) | **JURY TRIAL DEMANDED** |
| SABR MORTGAGE LOAN 2008-1 REO SUBSIDIARY-1, LLC, OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING, LLC, ) ) ) ) ) ) | |
| Defendants. ) | |

# TABLE OF CONTENTS

NATURE OF ACTION ................................................................ 1

PARTIES.................................................................................... 2

    A. The Plaintiff................................................................... 2

    B. The Defendants ............................................................ 3

JURISDICTION AND VENUE .................................................. 3

FACTUAL ALLEGATIONS ...................................................... 4

FIRST CAUSE OF ACTION:  FRAUD........................................ 8

SECOND CAUSE OF ACTION:  BREACH OF CONTRACT .................. 9

THIRD CAUSE OF ACTION: UNJUST ENRICHMENT  ........................ 11

FOURTH CAUSE OF ACTION:  VIOLATION OF THE FAIR DEBT
COLLECTION ACT UNDER 15 U.S.C. § 1692d ...................................... 11

FIFTH CAUSE OF ACTION:  VIOLATION OF THE FAIR CREDIT
REPORTING ACT UNDER 15 U.S.C. § 1681s-2(b) ................................ 13

SIXTH CAUSE OF ACTION:  INTENTIONAL INFLICTION OF
EMTIONAL DISTRESS ............................................................ 16

SEVENTH CAUSE OF ACTION:  SLANDER OF TITLE ...................... 17

EIGHTH CAUSE OF ACTION:  WRONGFUL FORECLOSURE............ 17

PRAYER FOR RELIEF ........................................................... 20

JURY DEMAND ..................................................................... 20

## NATURE OF THE ACTION

1. This Civil Action for damages under Federal and Alabama law arises from the fraudulent practices committed by SABR Mortgage Loan 2008-1 REO Subsidiary-1, LLC (SABR), Ocwen Financial Corporation ("OFC"), and Ocwen Loan Servicing, LLC ("OLS") (collectively "Ocwen" or "Defendants") in connection with its home mortgage loan servicing business.

2. Ocwen devised a scheme to deceive homeowners into believing they were behind on their mortgage payments. Ocwen fraudulently coerced homeowners into paying or believing they had to pay thousands of dollars in unlawfully marked-up fees.

3. Lelia Collier and Antoine Collier were both victims of Ocwen's fraudulent scheme.

4. On or about November 14, 2007, Plaintiffs, Lelia F. Collier and Antoine Collier, executed a mortgage in favor of Mortgage Electronic Registration System, Inc. ("MERS") as nominee for Equifirst Corporation, which said mortgage was recorded in the Office of the Judge of Probate Jefferson County, Alabama, at Book 200801 Page 20443; and was subsequently transferred to SABR Mortgage Loan 2008-1 REO Subsidiary-1, LLC, which is a subsidiary of Ocwen Loan Servicing LLC, on premises known as 524 Lamplighter Ln. Birmingham, Alabama.

5. Beginning in 2007 Ocwen began initiating a series of fraudulent acts that has caused significant damage to the Colliers. These acts include but are not limited to: improperly imposing force-placed insurance on the Colliers' property; improperly charging the Colliers' escrow account to pay property taxes, which they were exempt from paying; improperly charging fees to the Collier's mortgage account; improperly and fraudulently reporting incorrect information to the credit bureaus, negatively impacting the Colliers' credit rating; and wrongfully foreclosing on the Colliers' property.

6. The Plaintiffs have been damaged in multiple ways by SABR Mortgage Loan 2008-1 REO Subsidiary-1, LLC, Ocwen Financial Corporation, and Ocwen Loan Servicing, LLC. They have suffered economic and emotional harm, as well as damage to their credit rating.

## **PARTIES**

A. Plaintiffs

7. Plaintiff Lelia F. Collier is a citizen and resident of Alabama. Ms. Collier has a mortgage contract with SABR Mortgage Loan 2008-1 REO Subsidiary-1, LLC, which is a subsidiary of Ocwen Loan Servicing LLC, on premises known as 524 Lamplighter Ln. Birmingham, Alabama.

8. Plaintiff Antoine Collier is a citizen and resident of Alabama. Mr. Collier is a co-signer on the mortgage contract with SABR Mortgage Loan 2008-1 REO

Subsidiary-1, LLC, which is a subsidiary of Ocwen Loan Servicing LLC, on premises known as 524 Lamplighter Ln. Birmingham, Alabama.

B. Defendants

9.  Defendant Ocwen Financial Corporation is a foreign corporation doing business in the State of Alabama.

10. Defendant Ocwen Loan Servicing, LLC, is a foreign corporation doing business in the State of Alabama.

11. Defendant SABR Mortgage Loan 2008-1 REO Subsidiary-1, LLC, is a domestic corporation doing business in the State of Alabama. SABR Mortgage Loan 2008-1 REO Subsidiary-1, LLC, is a subsidiary of Ocwen Loan Servicing, LLC.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction over the Colliers' federal law claims under 28 U.S.C. § 1331.

13. This Court has supplemental jurisdiction over the Colliers' state law claims under 28 U.S.C. § 1367(a) because they are part of the same case and controversy described by the Colliers' federal claims, and independent original jurisdiction over the Colliers' state law claims under 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds the $75,000, exclusive of interest and costs.

3

14. Venue is proper in the Northern District of Alabama under 28 U.S.C. §§ 1391(b)(1), (2), and (3), because most or all of the Defendants reside and may be found in the Northern District of Alabama and a substantial part of the events establishing these claims occurred in the Northern District of Alabama.

## FACTUAL ALLEGATIONS

15. On or about November 14, 2007, Plaintiffs, Lelia and Antoine Collier, executed a mortgage in favor of MERS as nominee for Equifirst Corporation, which said mortgage was recorded in the Office of the Judge of Probate Jefferson County, Alabama, at Book 200801 Page 20443; and was subsequently transferred to SABR Mortgage Loan 2008-1 REO Subsidiary-1, LLC, which is a subsidiary of Ocwen Loan Servicing LLC, on premises known as 524 Lamplighter Ln. Birmingham, Alabama,.

16. On or about August 2008 Ocwen improperly imposed force-placed insurance on the Colliers causing Plaintiff Lelia Collier to overdraft on her bank account and therefore not have available funds to make the monthly mortgage payment.

17. During the time Ocwen imposed force-placed insurance on the Colliers' property, the Colliers had insurance on the property located at 524 Lamplighter Ln. Birmingham, Alabama, through Allstate Insurance.

4

18. As a result of Ocwen improperly imposing force-placed insurance the Colliers' monthly mortgage payment drastically increased to an amount that was not previously agreed to, and that the Colliers were unable to pay.

19. As a result of Ocwen's actions the Colliers were caused to defaulted under the terms of their mortgage agreement and Ocwen began foreclosure proceeding.

20. On or about August of 2009 the Colliers and Ocwen entered into a modification of the original mortgage contract.

21. Pursuant to the terms of the modification, the Colliers' payments were set at $546.27.

22. The Colliers made all required payments under the terms of the modification of the original mortgage contract.

23. Ocwen breached terms of the terms of the modification of the mortgage contract executed on or about August 2009 when it commenced foreclosure on the Colliers' property in October 2009.

24. The foreclosure deed was recorded on December 3, 2009.

25. The foreclosure was later rescinded. Ocwen claimed it did not intend for the Foreclosure to take place and that due to an administrative error on their part the foreclosure sale was not cancelled, and a foreclosure deed was inadvertently recorded.

26. However, the foreclosure negatively impacted the Colliers' credit report. The negative reporting was never corrected by Ocwen.

27. Subsequent to the foreclosure recension the Colliers made all payments required pursuant to the terms of the modification. The Colliers also maintain and paid all insurance premiums on the property.

28. On or about June 2011 Ocwen once again improperly imposed force-placed insurance on the Colliers' property.

29. On or about November 2011 Ocwen charged the Colliers' escrow account to pay property taxes.

30. The Colliers were exempt from paying property taxes on the property. The Colliers also maintained insurance on the property through Allstate Insurance. Ocwen was aware or should have been aware of this information.

31. As a result of Ocwen improperly imposing force-placed insurance and improperly assessing the Colliers to pay property taxes, their escrow account became deficient and Ocwen subsequently increased the Colliers' monthly mortgage payment in an attempt to collect the claimed deficiency in the escrow account.

32. The Colliers attempted to make payments on the mortgage while they tried to resolve Ocwen's error, however, Ocwen refused accept any payment but the full amount.

33. Ocwen began assessing fees after the Colliers were unable to pay the full amount Ocwen claimed was owed because of the improperly imposed forced place insurance.

34. Ocwen sent correspondence to the Colliers demanding payment, threatening foreclosure.

35. In an attempt to correct the errors made by Ocwen the Colliers entered into another modification of the mortgage.

36. On or about September 2014 ("September 2014 modification") the Colliers received a modification agreement from Ocwen which was back dated to August. Ocwen claimed their computer system would not allow them to change the date.

37. The Colliers subsequently entered into this modification agreement with Ocwen.

38. Under the terms of the September 2014 modification agreement the Colliers agreed to make an initial payment of $407.07 and payments of $264.61 thereafter.

39. During the modification process the Colliers once again notified Ocwen and gave evidence of their tax exempt status and that they would secure and maintain insurance on the property.

40. On September 26, 2014, the Colliers sent Ocwen a cashier's check for $671.68, which included the initial payment of $407.07 plus the first mortgage payment of $264.61.

41. On November 10, 2014, the Colliers received a mortgage account statement which claimed that the amount due was $611.48. The statement further informed the Colliers that the first mortgage payment was suspended and that their new payment amount was changed to $407.06.

42. The statement indicates that the Ocwen has once again placed insurance on the property and is assessing taxes against the Colliers.

43. During the time period in which the Colliers were attempting to resolve the issues with the September 2014 modification agreement Ocwen began refusing payments by the Colliers on April 9, 2015.

## FIRST CAUSE OF ACTION
### Fraud against OCWEN
### (Leila Collier and Antonie Collier)

44. The Colliers re-allege and incorporate by reference the allegations of Paragraphs 1 through 43, as if fully set forth herein.

45. The Colliers had a mortgage contract and loan modification agreement with Ocwen.

46. Ocwen led the Colliers to believe their mortgage payments would be set at the amount agreed upon in the modification agreements, inducing the Colliers to enter into the modification.

47. The Colliers maintained insurance on the property and informed Ocwen that they were exempt from property taxes.

48. Subsequent to entering into the modification the Colliers were informed that their payments were being changed to an amount that was higher than the agreed upon amount.

49. This new amount included an amount to be paid into escrow to cover insurance and property taxes.

50. Ocwen knew or should have known that the Colliers maintained insurance on the property and that they were exempt from property taxes.

51. Ocwen's fraudulent acts and omissions as described here have directly and proximately resulted in the Colliers' prior and continuing sustaining of damages including, but not limited to: punitive damages, statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of capacity for enjoyment of life, lost financing opportunities and financing terms making life more expensive for the Colliers; and attorney fees, interest and costs.

## SECOND CAUSE OF ACTION

## Breach of Contract against OCWEN
## (Leila Collier and Antonie Collier)

52. The Colliers re-allege and incorporate by reference the allegations of Paragraphs 1 through 51, as if fully set forth herein.

53. The Colliers had a mortgage contract and loan modification agreement with Ocwen.

54. Ocwen contracted with the Colliers to have their mortgage payments set at the amount agreed upon in the September 2014 modification agreement.

55. The Colliers maintained insurance on the property and informed Ocwen that they were exempt from property taxes.

56. Subsequent to entering into the modification the Colliers were informed that their "new" payments were being changed to an amount that was higher than the agreed upon amount in the September 2014 modification.

57. This new amount included an amount to be paid into escrow to cover insurance and property taxes.

58. Ocwen knew or should have known that the Colliers maintained insurance on the property and that they were exempt from property taxes.

59. Ocwen's breach as described here have directly and proximately resulted in the Colliers' prior and continuing sustaining of damages including, but not limited to: punitive damages, statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and

loss of capacity for enjoyment of life, lost financing opportunities and financing terms making life more expensive for the Colliers; and attorney fees, interest and costs.

### THIRD CAUSE OF ACTION
### Unjust Enrichment against OCWEN
### (Leila Collier and Antonie Collier)

60. The Colliers re-allege and incorporate by reference the allegations of Paragraphs 1 through 59, as if fully set forth herein.

61. By their wrongful acts and omissions of material facts, Ocwen was unjustly enriched at the expense of the Colliers.

62. Ocwen's unjust enrichment as described here has directly and proximately resulted in the Colliers' prior and continuing sustaining of damages including, but not limited to: punitive damages, statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of capacity for enjoyment of life, lost financing opportunities and financing terms making life more expensive for the Colliers; and attorney fees, interest and costs.

### FOURTH CAUSE OF ACTION
### Violation of the Fair Debt Collection Practices Act against OCWEN
### (Leila Collier and Antonie Collier)

63. The Colliers re-allege and incorporate by reference the allegations of Paragraphs 1 through 62, as if fully set forth herein.

64. The Colliers have been the object of collection activity by Ocwen arising from a mortgage.

65. Ocwen is a "debt collector" as defined by the FDCPA.

66. Ocwen engaged in an act or omission prohibited under 15 U.S.C. § 1692d engaging in conduct in connection with the collection of a debt, the natural consequence of which is to harass, oppress, of abuse the Colliers and Ms. Foster.

67. Ocwen engaged in an act of omission prohibited under 15 U.S.C. § 1692e (2)(A) by falsely representing the character, amount or legal status of the alleged debt at issue.

68. Ocwen engaged in an act or omission prohibited under 15 U.S.C. § 1692e (8) by communicating credit information which is known or should be known to be false.

69. Ocwen engaged in an act or omission prohibited under 15 U.S.C. § 1692e (10) by the use of false representations or deceptive means to collect or attempt to collect a debt from the Colliers.

70. Ocwen engaged in an act or omission prohibited under 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect a debt from the Colliers.

71. Ocwen's acts and omissions as described here have directly and proximately resulted in the Colliers' prior and continuing sustaining of damages as described by 15 U.S.C. § 1692 et seq. including, but not limited to: punitive damages, statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of capacity for enjoyment of life, lost financing opportunities and financing terms making life more expensive for the Colliers; and attorney fees, interest and costs.

**FIFTH CAUSE OF ACTION**
**Violation of the Fair Credit Reporting Act against OCWEN**
**(Leila Collier and Antonie Collier)**

72. The Colliers re-allege and incorporate by reference the allegations of Paragraphs 1 through 71, as if fully set forth herein.

73. Ocwen violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), by providing false information to the credit bureaus with respect to the Colliers.

74. Section 1681s-2(a)(1) and (2) provides:

> (a) Duty of furnishers of information to provide accurate information.
> (1) Prohibition.
> (A) Reporting information with actual knowledge of errors. A person shall not furnish any information relating to a consumer

to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

(B) Reporting information after notice and confirmation of errors. A person shall not furnish information relating to a consumer to any consumer reporting agency if

    (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

    (ii) the information is, in fact, inaccurate.

(C) No address requirement. A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however, nothing in subparagraph (B) shall require a person to specify such an address.

(D) Definition. For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.

(2) Duty to correct and update information. A person who—

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

75. Ocwen had a duty at all times to provide truthful credit information to all credit agencies.

76. Ocwen knew or should have known that its credit reports about the Colliers contained false information and exhibited a reckless, knowing and intentional disregard for the truth or falsity of that information.

77. Ocwen intentionally and/or negligently neglected to fulfill its duty to report truthfully.

78. Ocwen, its principals, and subsidiaries committed such violations willfully and negligently, thereby violating 15 U.S.C. § 1681n and/or § 1681o.

79. Section 1681n(a) provides:

(a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 USCS §§ 1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of--
   (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000; or (B) in the case of liability of a natural person for obtaining a consumer report   under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $ 1,000, whichever is greater;
   (2) such amount of punitive damages as the court may allow; and

   (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

80. Section 1681o provides:

(a) In general. Any person who is negligent in failing to comply with any requirement imposed under this title [15 USCS §§ 1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of—
   (1) any actual damages sustained by the consumer as a result of the failure; and
   (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

(b) Attorney's fees. On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

81. Ocwen's acts and omissions as described here have directly and proximately resulted in the Colliers' prior and continuing sustaining of damages as described by 15 U.S.C. § 1681 et seq. including, but not limited to: punitive damages, statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of capacity for enjoyment of life, lost financing opportunities and financing terms making life more expensive for the Colliers; and attorney fees, interest and costs

### SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress against OCWEN
### (Leila Collier and Antonie Collier)

82. The Colliers re-allege and incorporate by reference the allegations of Paragraphs 1 through 81, as if fully set forth herein.

83. Upon information and belief, the outrageous conduct of Ocwen individually, and through its employees, agents, representatives, subsidiaries and collectors, as described herein, deliberately, recklessly and/or intentionally inflicted emotional distress on the Colliers.

84. The outrageous conduct of Ocwen, as described herein, was directed at the Colliers by and through Ocwen's employees, agents, representatives,

subsidiaries, collectors or other persons acting to benefit and further in the interest of Ocwen, and acting in the course and scope of their employment or agency with Ocwen.

85. As a direct and proximate result of the outrageous conduct of Ocwen, as described herein, the Colliers sustained mental pain and suffering, emotional distress, mental anguish, inconvenience, and loss of capacity for enjoyment of life.

### SEVENTH CAUSE OF ACTION
### Slander of Title against OCWEN
### (Leila Collier and Antonie Collier)

86. The Colliers re-allege and incorporate by reference the allegations of Paragraphs 1 through 85, as if fully set forth herein.

87. Ocwen in filing a foreclosure deed – which is void - has caused a cloud to be placed on the title of the the Colliers' property.

88. As the proximate cause of Ocwen's said slandering of the Colliers' title, the Colliers were caused to suffer injuries and damages and claim all damages allowable under law.

### EIGHTH CAUSE OF ACTION
### Wrongful Foreclosure
### (Leila Collier and Antonie Collier)

89. The Colliers re-allege and incorporate by reference the allegations of Paragraphs 1 through 88, as if fully set forth herein.

90. On or about November 14, 2007, the Colliers executed a mortgage in favor of MERS as nominee for Equifirst Corporation, which said mortgage was recorded in the Office of the Judge of Probate Jefferson County, Alabama, at Book 200801 Page 20443; and was subsequently transferred to SABR Mortgage Loan 2008-1 REO Subsidiary-1, LLC, which is a subsidiary of Ocwen Loan Servicing LLC, on premises known as 524 Lamplighter Ln. Birmingham, Alabama,.

91. On or about August 2008 Ocwen improperly imposed force-placed insurance on the the Colliers causing Plaintiff Lelia Collier to overdraft on her bank account and therefore not have available funds to make the monthly mortgage payment.

92. During this time the Colliers had insurance on the property located at 524 Lamplighter Ln. Birmingham, Alabama, through Allstate Insurance. (See Exhibit)

93. As a result of Ocwen improperly imposing force-placed insurance the the Colliers' monthly mortgage payment drastically increased to an amount that was not previously agreed to, and that the Colliers were unable to pay.

94. As a result of Ocwen's actions the Colliers defaulted under the terms of their mortgage agreement and Ocwen began foreclosure proceeding.

95. On or about August of 2009 the Colliers and Ocwen entered into a modification of the original mortgage contract.

96. Pursuant to the terms of the modification, the Colliers' payments were set at $546.27.

97. The Plaintiffs' made all required payments under the terms of the modification of the original mortgage contract.

98. Ocwen breached terms of the terms of the modification of the mortgage contract executed on or about August 2009 when it commenced foreclosure on the Colliers' property in October 2009.

99. The foreclosure deed was recorded on December 3, 2009.

100. The foreclosure was later rescinded. Ocwen claimed it did not intend for the Foreclosure to take place and that due to an administrative error on their part the foreclosure sale was not cancelled, and a foreclosure deed was inadvertently recorded.

101. Ocwen's wrongful foreclosure as described here has directly and proximately resulted in the Colliers' prior and continuing sustaining of damages including, but not limited to: punitive damages, statutory damages, actual damages in the form of emotional pain and suffering, fear, worry,

embarrassment, humiliation and loss of capacity for enjoyment of life, lost financing opportunities and financing terms making life more expensive for the Colliers; and attorney fees, interest and costs

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Lelia Collier and Antoine Collier respectfully requests this Court enter judgment against Defendants SABR Mortgage Loan 2008-1 REO Subsidiary-1, LLC, Ocwen Financial Corporation, and Ocwen Loan Servicing, LLC and their favor for damages she suffered due to Defendants' actions, including, but not limited to:

1.   Order such injunctive relief to prevent any further violation of the statutory rights of homeowners by Ocwen;

2.   Order Ocwen to update credit reporting bureaus as it pertains to Plaintiffs past and continuing negative credit history caused by Ocwen's actions.

3.   An award to Plaintiffs of economic and compensatory damages, punitive damages, reasonable attorneys' fees and costs in the amount of ONE MILLION DOLLARS ($1,000,000.00); and all other relief the Court deems just.

## **JURY DEMAND**

Plaintiffs Leila and Antoine Collier requests a trial by jury on all claims so triable.

DATE:  June 8, 2015

Respectfully Submitted,

*/s/ Brandon C. Prince*
Brandon C. Prince

WALDREP STEWART
& KENDRICK, LLC
2323 Second Avenue North
Birmingham, AL  35203
Telephone: (205) 254-3216
Facsimile:  (205) 327-8395
bprince@wskllc.com

*/s/ Jon K. Vickers*
Jon K. Vickers

Jon K. Vickers, Esq., PC
2323 2nd Avenue North
Birmingham, Alabama 35203
Telephone: (205) 327-8340
Facsimile: (855) 324-3802
Jkvlaw16@gmail.com

Attorneys for Lelia Faye Collier and
Antione Collier

SUMMONS AND COMPLAINT TO BE SERVED BY CERTIFIED MAIL AS

FOLLOWS:

Ocwen Financial Corporation
Registered Agent: CSC Lawyers Incorporating SVC Inc.
150 S. Perry Street
Montgomery, AL 36104

Ocwen Loan Servicing, LLC
Registered Agent: CSC Lawyers Incorporating SVC Inc.
150 S. Perry Street
Montgomery, AL 36104

SABR Mortgage Loan 2008-1 REO Subsidiary-1, LLC
Registered Agent: CSC Lawyers Incorporating SVC Inc.
150 S. Perry Street
Montgomery, AL 36104